UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYL WESLEY GARRISON

       Petitioner,

                                      Case No. 1:04-cv-196
v.                                    Hon. Wendell A. Miles

DAVID GUNDY

       Respondent.
                               /

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.    Background**

Following a jury trial, petitioner was convicted of one count of second-degree murder, M.C.L. § 750.317 and sentenced to a term of twenty five (25) to fifty (50) years' imprisonment.

Petitioner raised three issues in his direct appeal to the Michigan Court of Appeals:

I.    Is defendant entitled to a new trial because his state and federal constitutional rights to the effective assistance of counsel were denied where counsel failed to request instructions on accident, involuntary manslaughter, and imperfect self-defense?

II.    Did the trial judge deny defendant a fair trial by failing to sua sponte read instructions on accident, involuntary manslaughter, and imperfect self-defense?

III.    Did the trial court violate defendant's due process rights by admitting gruesome photographs of the decedent where the unfair prejudice substantially outweighed any probative value?

Petitioner filed a supplemental *pro se* issue:

IV. Defendant-Appellant asserts the trial court denied him due process of law when the trial court judge failed to sua sponte, instruct the jury to the defendant's theory of the case, contrary to the Mich Const 1963, Art 1, § 20; United States Constitution Amend VI, XIV.

The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Daryl Wesley Garrison*, No. 231962 (Mich. App. Sept. 20, 2002). Petitioner filed a *pro se* application for leave to appeal to the Michigan Supreme Court, which raised the same four issues. The Michigan Supreme Court denied petitioner's application for leave to appeal. *People v. Daryl Wesley Garrison*, No. 122711 (Mich. Apr. 29, 2003).

In his habeas corpus petition, petitioner states three issues as grounds for habeas relief:

I. Petitioner is entitled to a new trial because his State and Federal [Constitutional] rights to the effective assistance of counsel were denied where counsel failed to request instructions on accident, and involuntary manslaughter, and imperfect self defense.

II. The trial judge denied petitioner a fair trial by failing to sua sponte read instructions of accident, involuntary manslaughter, and imperfect self defense.

III. The trial court violated petitioner's due process rights by admitting gruesome photographs of the decedent where the unfair prejudice substantially outweighed any probative value.

Petition at ¶ 14.

## II. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

2

Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). In the present case, petitioner has exhausted his state remedies with respect to his habeas claim.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
> 
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of

clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III. Petitioner's claims

#### A. Ineffective assistance of counsel

First, petitioner contends that he was denied the effective assistance of counsel during trial when his attorney failed to request jury instructions on accident, involuntary manslaughter, and imperfect self defense. Petition at ¶ 14. The Michigan Court of Appeals addressed petitioner's claim of ineffective assistance of counsel as follows:

> Defendant first argues that he was deprived of effective assistance of counsel when his trial counsel failed to request instructions on accident, involuntary manslaughter, and imperfect self-defense. We disagree. Because defendant failed to move for a new trial or a *Ginther* hearing, our review of this issue is limited to mistakes apparent on the existing record. *People v. Avant,* 235 Mich.App 499, 507; 597 NW2d 864 (1999); *People v. Marji,* 180 Mich.App 525, 533; 447 NW2d 835 (1989).
>
> In order for this Court to reverse an otherwise valid conviction due to the ineffective assistance of counsel, the defendant must establish that his counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and that the representation so prejudiced the defendant that, but for counsel's error, the result of the proceedings would have been different. *People v. Noble,* 238 Mich.App 647, 662; 608 NW2d 123 (1999), citing *People v. Pickens,* 446 Mich. 298, 302-303; 521 NW2d 797 (1994); *People v. Effinger,* 212 Mich.App 67, 69; 536 NW2d 809 (1995). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Id.* Furthermore, the defendant must overcome a strong presumption that the assistance of counsel was sound trial strategy, because this Court will not second-guess counsel regarding matters of trial strategy, even if counsel was ultimately mistaken. *People v. Rice (On Remand),* 235

Mich.App 429, 444-445; 597 NW2d 843 (1999). Nor will it assess counsel's competence with the benefit of hindsight. *Id.* at 445.

Defendant claims his trial counsel was ineffective in failing to request an accident instruction. Jury instructions must not omit material issues, defenses, and theories if the evidence supports them. *People v. Bartlett,* 231 Mich.App 139, 143; 585 NW2d 341 (1998). Here, defendant's trial counsel vigorously pursued a legitimate trial strategy of self-defense, which the evidence supported and on which the trial court instructed the jury. On the other hand, apart from the possibility that defendant's trial counsel did not want to dilute the strength of this defense by arguing inconsistent theories, the evidence simply did not support an accident instruction. Defendant suggests that because the victim fell on a knife that defendant drew while he and the victim were fighting at close quarters, the evidence supported a theory of accident. The term "accident" has been judicially defined as "some sudden and unexpected event taking place without expectation, upon the instant, rather than something which continues, progresses or develops; something happening by chance; something unforeseen, unexpected, unusual, extraordinary or phenomenal, taking place not according to the usual course of things or events, out of the range of ordinary calculations ...." *People v. Hess,* 214 Mich.App 33, 37; 543 NW2d 332 (1995) (citations omitted). By this definition, it can hardly be said that it is "unexpected" or "something unforeseen" or "out of the range of ordinary calculations," let alone "phenomenal," when the result of two people fighting at close range while one of them holds a knife is for one of them to be cut by the knife. *See id.* The evidence simply did not support an instruction for accident, and it was not ineffective assistance for counsel not to request this instruction, as counsel is not required to advocate a meritless position. *People v. Snider,* 239 Mich.App 393, 425; 608 NW2d 502 (2000).

Similarly, the evidence did not support the theory that defendant was guilty of involuntary manslaughter. An instruction on a lesser-included offense is appropriate only if there is evidence that would support a conviction of the lesser offense. *People v. Moore,* 189 Mich.App 315, 319; 472 NW2d 1 (1991). *See also People v. Cornell,* 466 Mich. 335, 357; 646 NW2d 127 (2002). As defined by our Supreme Court in *People v. Townes,* 391 Mich. 578, 590; 218 NW2d 136 (1974):

> "'Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.'"

An involuntary manslaughter instruction would not have been appropriate in this case because, again, the evidence presented at trial did not support such an instruction. Rather, the evidence established that defendant pulled a knife on the victim during a fight at close quarters. Thus, this cannot be described as an act that

is not "naturally tending to cause death or great bodily harm," or that it is lawful in itself. *Id.* Accordingly, the evidence in this case does not support a conviction of involuntary manslaughter and trial counsel was not ineffective in failing to request such an instruction.

Although the trial court instructed the jury on self-defense, defendant argues that his trial counsel should have requested an instruction on imperfect self-defense as well. Michigan law, however, does not apply the concept of imperfect self-defense to circumstances where, as here, the defendant was not the initial aggressor. *People v. Butler,* 193 Mich.App 63, 67; 483 NW2d 430 (1992). Thus, such an instruction would have been improper, and it was not ineffective for counsel not to advocate this meritless position. *Snider, supra.*

*Garrison,* No. 231962, at *1-2 (footnote omitted).

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine when ineffective assistance of counsel exists: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." The reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

"The Constitution does not guarantee every defendant a successful defense." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3 (6th Cir. 1998), *citing Strickland*, 466 U.S. at 690. Neither does the Constitution guarantee petitioner "an excellent lawyer" or a "good lawyer." *Id.* at *5, *citing Strickland*, 466 U.S. at 687. Rather, "the Sixth Amendment right to the effective assistance of counsel entitles [a criminal defendant] to nothing more than a 'reasonably competent attorney' whose performance falls 'within the range of competence demanded of attorneys in criminal cases.'" *Id.* A trial counsel's tactical decisions are particularly difficult to challenge when

6

claiming ineffective assistance of counsel. *See McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). Accordingly, petitioner must "overcome a presumption that the challenged action might be considered sound trial strategy." *Id.*

### 1. Involuntary manslaughter instruction

Petitioner claims that he was prejudiced by his counsel's failure to request an involuntary manslaughter instruction and that his counsel had no sound trial strategy for failing to request this instruction. Petition at ¶ 14. At trial, the court instructed the jury on second-degree murder and the lesser crime of voluntary manslaughter. Trial Trans. V at 672-73. The court also gave the following self-defense instruction:

> The defendant claims that he acted in lawful self-defense. A person has the right to use force or even take a life to defend himself under certain circumstances. If a person acts in lawful self-defense, his actions are excused and he is not guilty of any crime. You should consider all the evidence and use the following rules to consider whether the defendant acted in lawful self-defense.
>
> Remember to judge the defendant's conduct according to how the circumstances appeared to him at the time he acted.
>
> First, at the time he acted, the defendant must have honestly and reasonably believed that he was in danger of being killed or seriously injured. If his belief was honest and reasonable, he could act immediately to defend himself, even if it turns out later that he was wrong about how much danger he was in. In deciding if the defendant's belief was honest and reasonable, you should consider all the circumstances as they appeared to the defendant at the time.
>
> Second, a person may not kill or seriously injure another person just to protect himself against what seems like a threat of only minor injury. The defendant must have been afraid of death or serious physical injury. When you decide if the defendant was afraid of death or serious physical injury, you should consider all of the circumstances, the conditions of the people involved, including their relative strength, whether the other person was armed with a dangerous weapon or had some other means of injuring the defendant, the nature of the other person's attack or threat, or whether the defendant knew about any previous violent acts or threats made by the other person.

> Third, at the time he acted, the defendant must have honestly and reasonably believed that what he did was immediately necessary. Under the law, a person may only use as much force as he thinks is necessary at the time to protect himself.
>
> When you decide whether the amount of force used seemed to be necessary, you may consider whether the defendant knew about any other ways of protecting himself, but you may also consider how the excitement of the moment affected the choice the defendant made.
>
> By law, a person must avoid using deadly force if he can safely do so. If the defendant could have safely retreated but did not do so, you can consider that fact along with all the other circumstances when you decide whether he went farther in protecting himself than he should have.
>
> However, if the defendant honestly and reasonably believed that it was immediately necessary to use deadly force to protect himself from an imminent threat of death or serious injury, the law does not require him to retreat. He may stand his ground and use the amount of force he believes necessary to protect himself.
>
> The defendant does not have to prove that he acted in self-defense. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense.

Trial Trans. V at 674-76.

For purposes of this analysis, the court will assume that petitioner desired the trial court to use the Michigan standard jury instruction for involuntary manslaughter, CJI2d 16.10, which reads as follows:

> (1) [The defendant is charged with the crime of/You may also consider the lesser charge of] involuntary manslaughter. [Murder is reduced to involuntary manslaughter if the defendant did not intend to kill or did not knowingly create a very high risk of death, but instead acted with unreasonable disregard for life.] To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> (2) First, that the defendant caused the death of [name deceased], that is, that [name deceased] died as a result of [state alleged act causing death].
>
> [Use (3) when gross negligence is alleged without reference to a misdemeanor offense:]

8

>(3) Second, in doing the act that caused [name deceased]'s death, the defendant acted in a grossly negligent manner.
>
>[Use (4) in misdemeanor situations:]
>
>(4) Second, when doing the act that caused [name deceased]'s death, the defendant committed an unlawful act that was naturally dangerous to human life, that is, an act that was grossly negligent of human life.
>
>[(5) Third, that the defendant caused the death without lawful excuse or justification.]

*People v. Datema*, 448 Mich. 585, 591 n. 6; 533 N.W.2d 272 (1995), *quoting* CJI2d 16.10.

Trial counsel will often be presented with a strategic decision to either request or not request specific jury instructions at trial. Faced with such a situation, counsel will not be deemed constitutionally ineffective if they choose not to request a particular instruction, provided that such a decision constitutes sound trial strategy. *See, e.g., Scott v. Elo,* 302 F.3d 598 (6th Cir. 2002) (counsel's failure to request an involuntary manslaughter instruction was held to not be deficient performance "because the evidence did not support a finding of involuntary manslaughter, and because counsel made a strategic decision to advance to other defense theories - intoxication and provocation.").

Under the facts of this case, counsel's failure to request an involuntary manslaughter instruction was a sound trial strategy. The standard jury instruction for involuntary manslaughter requires the jury to find petitioner culpable for causing the victim's death. However, petitioner maintained throughout the trial that he acted in self-defense and was not legally responsible for the victim's death. Petitioner's counsel argued that the victim was the initial aggressor, that petitioner "was acting in rightful and legitimate self-defense," and that petitioner had "every right to be scared" of the victim (characterized as the attacker). *See* Trial Trans. II at 163-64; Trial Trans. V at 638, 641.

9

It would be inconsistent, if not unsound trial strategy, for petitioner's counsel to request a jury instruction which provided that petitioner was either grossly negligent or had an intent to injure the victim, after steadfastly arguing throughout the trial that petitioner acted in self-defense and was entirely innocent. "[A] defendant who relies entirely upon the defense of self-defense cannot expect the trial judge to instruct the jury regarding statutory involuntary manslaughter." *People v. Heflin*, 434 Mich. 482, 503; 456 N.W.2d 10 (1990).

Pursuing an "all-or-nothing" strategy of refusing to request instructions on lesser-included offenses in the hope that a jury may find insufficient evidence to convict a defendant of the top count of the indictment against them can constitute valid trial strategy on behalf of trial counsel. *See, e.g., Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005) (counsel's failure to request instruction for lesser included offense of manslaughter was a permissible exercise of trial strategy during defendant's murder trial, where defendant's primary line of defense was that he did not shoot the victim).

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### 2. Accident instruction

Next, petitioner claims that he was prejudiced by his counsel's failure to request an accident instruction and that counsel had no sound trial strategy for failing to request this instruction.

Petition at ¶ 14. For purposes of this analysis, the court will assume that petitioner desired the trial court to use the Michigan standard jury instruction for accident, CJI2d 7.1, which reads as follows:

> (1) The defendant says that [he/she] is not guilty of _____ because _____'s death was accidental. That is, the defendant says that _____ died because [describe outside force; e.g., "the gun went off as it hit the wall"].
>
> (2) If the defendant did not mean to [pull the trigger/(state other action)] then [he/she] is not guilty of murder. The prosecutor must prove beyond a reasonable doubt that the defendant meant to _____.

*People v. Hofe*, No. 250653, 2005 WL 1187115 at *4 n. 4 (Mich. App. May 19, 2005), *quoting* CJI2d 7.1.

The Michigan Court of Appeals concluded that the evidence on the record did not support an accident instruction, because the petitioner's counsel "vigorously pursued a legitimate trial strategy of self-defense, which the evidence supported and on which the trial court instructed the jury." *Garrison,* No. 231962, at *2. Petitioner testified that the victim hit him from behind (on the back of the head) and grabbed his throat. Trial Trans. V at 533-36. Petitioner "broke away from the choke hold" and pulled out his knife because he was scared for his life. *Id.* at 536-37. In petitioner's words, he "went into self-defense" [sic]. *Id.* at 537. Petitioner slashed out at the victim, the victim grabbed his right wrist (with the knife in it) and started pushing him backwards. *Id.* at 538. They struggled and fell to the ground. *Id.* at 538-39. After they struggled and rolled, petitioner still had the knife in his hand. *Id.* at 543. The victim was on top of petitioner. *Id.* at 544. Petitioner testified that he pushed the victim up with his left hand and knees and recognized the victim. *Id.* at 544-45. At this point, petitioner states that the struggle had stopped. *Id.* at 545. Then, as he was pushing up the victim, his hand started to slip and the victim fell back down on the knife, which

petitioner still held in his right hand. *Id.* at 546. Thus, petitioner's testimony was that the victim "fell on the knife" which petitioner held "sticking straight up" in his right hand. *Id.* Finally, petitioner admitted that he did not inform the detectives of this scenario. *Id.* Rather, every time he was asked about the struggle, he stated that the knife was in his pocket. *Id.*

Petitioner's own testimony supported counsel's decision to pursue a self-defense instruction rather than an accident instruction. Although petitioner testified that the victim fell on the knife, the circumstances suggest that the stabbing was not accidental. Petitioner testified that he lifted the victim with his left hand while holding the knife "sticking straight up" in his right hand and that the victim fell on the knife when petitioner's hand slipped. This scenario does not suggest an "unforeseen, unexpected, unusual, extraordinary or phenomenal" event, "taking place not according to the usual course of things or events, out of the range of ordinary calculations." *See Hess,* 214 Mich. App at 37. It would not be "unexpected" or "unforeseen" for the victim to be injured when the petitioner lifted him up with one hand while holding a knife in the other hand. Petitioner's claim of accident appears weak and implausible. Petitioner has failed to rebut the presumption that counsel utilized sound trial strategy in seeking a self-defense instruction. Under the facts of this case, counsel's decision to seek a self defense instruction constituted sound trial strategy. Accordingly, counsel was not constitutionally ineffective in failing to request an accident instruction. *See Scott,* 302 F.3d 598.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### 3. Imperfect self-defense instruction

Finally, petitioner claims that his counsel was ineffective in failing to request an instruction on imperfect self-defense. Petition at ¶ 14. Imperfect self-defense has been applied in some jurisdictions "where the defense of self-defense fails because the defendant was the aggressor, or maintained an unreasonable belief of danger, or reacted with an unreasonable amount of force." *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985), *abrogated in part on other grounds in People v. Heflin*, 434 Mich. 482, 503 n. 16; 456 N.W.2d 10 (1990). However, the Michigan Supreme Court has not recognized imperfect self-defense as a viable defense. *See People v. Posey*, 459 Mich. 960; 590 N.W.2d 577 (1999) (stating in order of remand that "[o]ur resolution of this matter should not be construed as a ruling that 'imperfect self-defense' is recognized as a theory which would reduce murder to manslaughter"); *People v. Stinson*, No. 254006, 2005 WL 839485 at *2 (Mich. App. April 12, 2005) ("[o]ur Supreme Court has not recognized imperfect self-defense as a viable defense in Michigan").

Furthermore, a claim of self-defense is mutually exclusive with a claim of imperfect self-defense, as the former requires that the defendant was not the initial aggressor and the latter is only applicable when the defendant is the initial aggressor. *See Heflin*, 434 Mich. at 508-509 (defining self-defense as a situation in which the defendant was acting in reasonable anticipation of harm but was not the initial aggressor). Accordingly, even if Michigan law recognized imperfect self-defense, such an instruction would be inconsistent with petitioner's claim that he was not the aggressor.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### B. Failure of the trial court to issue jury instructions *sua sponte*

Next, petitioner claims that the trial court was in error in not *sua sponte* instructing the jury as to accident, involuntary manslaughter, and imperfect self-defense. Petition at ¶ 14. The Michigan Court of Appeals dealt with petitioner's claim of error on a failure to issue instructions *sua sponte* as follows:

> Defendant next argues that the trial court erred in failing to sua sponte instruct on the three theories--accident, involuntary manslaughter, and imperfect self-defense--discussed *supra*. However, a trial court is not required to instruct the jury on lesser-included offenses unless requested. *People v. Moore,* 472 N.W.2d 1 (Mich. App. 1991). In this case, defendant failed to request the instructions he now asserts should have been given sua sponte by the trial court. Indeed, not only did defendant fail to request the instructions or object to the instructions as given, he expressed satisfaction with the jury instructions, thereby waiving the issue on appeal as his approval extinguished any error. *People v. Carter,* 462 Mich. 206, 214-216; 612 NW2d 144 (2000). Because defendant waived the issue, "there is no 'error' to review." *Id.* at 219.

*Garrison*, No. 231962, at *2.

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Habeas corpus relief is not warranted on the basis of an improper jury instruction simply because the instruction is undesirable, erroneous or universally condemned.

*Estelle*, 502 U.S. at 72. The instruction cannot be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* The only question arising out of a federal habeas challenge to a state court's jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (internal quotations omitted).

### 1. Involuntary Manslaughter Instruction

Petitioner claims that "[because] there was evidence that [he] may have been grossly negligent in attempting to push [the decedent] off of him while holding a knife, the trial court should have *sua sponte* instructed the jury on involuntary manslaughter." Petition at ¶ 14. The federal constitutional question before this court is whether the trial court's jury instructions so infected the entire trial that the resulting conviction violated petitioner's due process. *Estelle*, 502 U.S. at 72. "Although the Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, *see Beck v. Alabama*, 447 U.S. 625, 627 (1980), it has not held so in noncapital cases." *Scott*, 302 F.3d at 606. Accordingly, petitioner has no federal constitutional right to receive an instruction on a lesser included offense.

Furthermore, there is no federal constitutional right that requires a trial judge to *sua sponte* instruct the jury on possible lesser included offenses. As the Seventh Circuit observed in *Kubat v. Thieret*, 867 F.2d 351 (7th Cir. 1989):

> In *Beck*, the Court held that a state may not statutorily preclude a defendant from seeking lesser included offense instructions, if the evidence could support a finding of guilty on the lesser offense and not guilty on the greater. This holding is far from a rule requiring judges to *sua sponte* instruct the jury on lesser included offenses... No federal court has imposed on trial judges a duty to *sua sponte* instruct on lesser

> offenses and we agree... that the wisdom of such a rule would be questionable... "[s]uch a ruling [could potentially] compel the judge to present jury instructions at odds with the trial strategy of [defense] counsel."

*Kubat*, 867 F.2d at 365-66.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### 2. Accident Instruction

Next, petitioner contends that the trial judge should have *sua sponte* given an accident instruction to the jury, in addition to the self-defense instruction, "[b]ecause there was evidence that [he] accidentally stabbed [the decedent] in the chest." Petition at ¶ 14. Petitioner has failed to raise a constitutional issue subject to federal habeas review. "[T]he right to present inconsistent defenses is not so widespread or well-established as to be a fundamental rule essential for due process." *Taylor v. Withrow*, 288 F.3d 846, 854 (6th Cir. 2002) (trial judge's refusal to instruct a jury on both self-defense and accident prior to defendant's second-degree murder conviction was not cognizable on habeas review). Petitioner had no federal constitutional right to receive instructions for inconsistent defense. Accordingly, the trial court's failure to *sua sponte* issue inconsistent defense instructions for self-defense and accident could not violate petitioner's constitutional rights.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### 3. Imperfect self-defense

Next, petitioner claims that "because there was evidence that [he] was not the initial aggressor or used excessive force, the trial court should have *sua sponte* instructed the jury on imperfect self defense." Petition at ¶ 14. As the court previously discussed, the Michigan Supreme Court does not recognize "imperfect self-defense." Accordingly, the trial judge would have no duty to give such an instruction.

### C. Admission of Photographs at Trial

Petitioner contends that his due process rights were violated by the admission of "gruesome" photographs of the victim at trial. Petitioner asserts that any probative value of the photographs was substantially outweighed by their prejudicial nature. Petition at ¶ 14. The Michigan Court of Appeals dealt with the admission of the photographs as follows:

> Finally, defendant argues that the trial court erred by admitting, over his objections, gruesome photographs of the victim after his death, which showed not only his knife wounds, but also a large incision made in his chest at the hospital in an attempt to revive him. Specifically, defendant argues that the probative value of these photographs was substantially outweighed by their prejudicial effect, and therefore, they ought to have been excluded under MRE 403. We disagree. The trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). Contrary to defendant's argument, the probative value of the photographs strongly outweighed any prejudicial effect as the forensic pathology expert testified that the appearance of the wounds was crucial to a determination of whether the wounds could have been incurred by the victim falling on the knife as opposed to being stabbed, which was the central issue in dispute in this case. Because the probative value of the photographs outweighed any prejudicial effect and because even graphic and gruesome photographs are not to be excluded under MRE 403 when instructive to show material facts or conditions, such as the way an injury was received or whether it was inflicted intentionally, the trial court did abuse its discretion in admitting the

> photographs into evidence. *See People v Anderson*, 209 Mich App 527, 536; 531 NW2d 780 (1995).

*Garrison,* No. 231962, at *3.

A claim of improper admission of gruesome photographs, however well founded in state law, is not cognizable on habeas review. *See Cooey v. Coyle,* 289 F.3d 882, 893-94 (6th Cir. 2002), *citing Gerlaugh v. Stewart*, 129 F.2d 1027, 1032 (9th Cir. 1997) (holding that erroneous admission of gruesome photo of decedent did not raise "the specter of fundamental fairness such as to violate federal due process of law"). Furthermore, the Michigan Court of Appeals observed that the photographs were properly admitted because they addressed "the central issue in dispute in this case." *See, e.g., Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (photographs of the victim's meticulously dissected body did not deny the defendant a fundamentally fair trial, where the defendant claimed that he accidentally killed the victim and then mutilated the body with his pocket knife in a "blind rage," and the court admitted the photographs to show the jury the victim's pre-mortem and post-mortem injuries).

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).   Accordingly, petitioner is not entitled to habeas relief on this claim.

**IV.     Recommendation**

I respectfully recommend that petitioner's habeas petition be DENIED. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:     May 15, 2006                              /s/  Hugh W. Brenneman, Jr.
                                                     Hugh W. Brenneman, Jr.
                                                     United States Magistrate Judge



ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).